889 P.2d 1088

**In the Matter of an Application for the COMMITMENT OF an ALLEGED MENTALLY DISORDERED PERSON, Coconino County No. MH 1425.**

**No. CV–94–0026–PR.**

Supreme Court of Arizona,
En Banc.

Feb. 14, 1995.

Law Offices of Wendy F. White, P.C. by Wendy F. White, Flagstaff, for petitioner.

Terence C. Hance, Coconino County Atty. by William P. Ring, Deputy County Attorney, Flagstaff, for respondent.

## OPINION

ZLAKET, Justice.

The question presented is whether examiners retained to evaluate the mental health of a person facing involuntary commitment may serve as witnesses "acquainted with the patient" under A.R.S. § 36–539(B). We hold that they cannot.

Petitioner was arrested for trespassing on April 2, 1992. He was transferred to the Coconino County jail, where he assaulted another inmate. When the nursing staff reported that petitioner was behaving in a suspicious and paranoid manner, jail personnel initiated involuntary commitment proceedings.

Four mental health professionals, three of whom worked for the same agency, attempted to examine and evaluate petitioner at the jail. The first examiner, Dr. Mark Giesecke, interviewed him for about thirty minutes. Petitioner was in handcuffs during much of this time. He declined the physician's later attempt to conduct a second interview. Petitioner met briefly with the other three examiners but refused to answer their questions. Not surprisingly, all four found him to be guarded, suspicious, and uncooperative. Only Dr. Giesecke, however, reported other abnormal behavior. He believed petitioner displayed inappropriate amusement during his examination. Giesecke also spoke with petitioner's father and brother. They reportedly expressed concern about petitioner's mental health. Neither relative, however, was called as a witness or provided written testimony at the commitment hearing.

Three of the four examiners retained by the county, including Dr. Giesecke, concluded that petitioner was probably suffering from a major mental disorder. Two of them relied heavily on Giesecke's observations. The fourth doctor believed that he did not have enough evidence to reach such a conclusion. Dr. Giesecke and another of those who suspected a major disorder testified as the medical experts at the commitment hearing. The other two submitted written reports [1] as acquaintance witnesses. These reports clearly contained what purported to be professional evaluations of petitioner's mental health.

Petitioner requested an additional examination by an independent mental health professional, as permitted by A.R.S. § 36–538. The psychologist performing that examination testified at the hearing. She found petitioner cooperative and pleasant, and observed no inappropriate or abnormal behavior during her forty-minute meeting with him. She noted only that he was "guarded and suspicious." She apparently based this conclusion on petitioner's insistence that it was not his burden to establish sanity, but rather the court's to find a mental impairment. Despite her observations to the contrary, however, this psychologist determined that inpatient commitment for schizophrenia was appropriate based on reports of the other examiners and petitioner's family.

---

1. The reports were received in lieu of oral testimony, pursuant to a stipulation of counsel.

The court found that petitioner was likely suffering from schizophrenia. It ordered involuntary commitment and treatment for up to 180 days, pursuant to A.R.S. § 36–540. The court of appeals affirmed, with one judge dissenting. The majority held that "[t]he *only* requirement [for acquaintance witnesses] is that such witnesses be acquainted with the patient at the time of the mental disorder." *In re Coconino County No. MH 1425*, 176 Ariz. 525, 528, 862 P.2d 898, 901 (Ct.App.1993).

▆ This case is now moot, as petitioner has completed his term of confinement and, in fact, has served a second 180–day involuntary commitment period. We will occasionally accept a moot case for decision where the issue presented is capable of repetition but evades review, *see Sherrill v. Department of Transp.*, 165 Ariz. 495, 497, 799 P.2d 836, 838 (1990), especially if it has statewide importance. *See In re Gila County No. MH 92– 020*, 176 Ariz. 616, 617, 863 P.2d 908, 909 (Ct.App.1993). Because of the statutory time limits on commitment orders and the delays inherent in the appellate process, the merits of this issue potentially evade our review. Additionally, the parties have agreed that it is common practice to use mental health examiners as acquaintance witnesses. Therefore, because this decision may have a significant impact on the mechanics of involuntary commitment hearings and bears importance beyond the facts of this case, we accepted review.

▆ A.R.S. § 36–539(B) requires that the evidence presented at an involuntary commitment hearing must include "testimony of *two or more* witnesses acquainted with the patient at the time of the alleged mental disorder *and* testimony of *the two physicians* who performed examinations in the evaluation of the patient." (Emphasis added.) It goes on to say that "other persons who have participated in the evaluation of the patient" shall testify at the request of the court or the patient's attorney. *Id.* "Evaluation," as used in the statute, is the process of determining the mental health of the patient prior to the commitment hearing and normally involves two physicians (preferably psychiatrists) and two other evaluators, at least one of whom shall be a psychologist or social worker. A.R.S. § 36–501(11).

We agree with Judge Kleinschmidt's dissent below. There is a clear distinction between the two categories—acquaintance witnesses and mental health evaluators—and the statute plainly requires both. Two physician evaluators *must* be called by one side or the other, along with two witnesses acquainted with the patient. Obviously, if the other professional evaluators can be used as the acquaintance witnesses, the specific statutory limitation that they only "shall testify at the request of the court or of the patient's attorney" becomes ˙superfluous. A.R.S. § 36–539(B). An important rule of statutory construction is that "the court must read the statute as a whole, and give meaningful operation to all of its provisions." *Wyatt v. Wehmueller,* 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991). Applying this precept, it appears under our statutory scheme that no person whose primary contact with the patient was to examine the patient during his or her commitment evaluation process may testify at the hearing as one of the required acquaintance witnesses.

Although we are unable to find any record of legislative intent, we can reasonably infer the statute's purposes in requiring these two separate categories of witnesses: first, to prevent professional mental health evaluators, whether consciously or otherwise, from simply ratifying or "rubber stamping" one another's findings; and second, to give the trial court an opportunity to determine how the patient behaves in situations other than commitment evaluation interviews. Such goals may be frustrated when other evaluators are used as acquaintance witnesses. Here, for example, it seems that everyone based his or her conclusions almost entirely on Dr. Giesecke's reported observations.

Moreover, providing for an independent evaluation at the patient's request may not always safeguard against professional bias. This is clear from the independent examiner's report, in which she shows more confidence in the conclusions of the other evaluators than in her own observations. The trial court in this case simply *did not have* much opportunity to hear how petitioner be-

haved when he was not handcuffed and being interrogated about his mental health by people who clearly had the power to commit him to a mental institution. As Judge Kleinschmidt explained, the two non-physician evaluators "could offer no more perspective on the question than could the examining physicians who the court in [*In re Burchett*, 23 Ariz. App. 11, 13, 530 P.2d 368, 370 (1975)] said were not persons 'acquainted with' the patient." *In re Coconino County No. MH 1425*, 176 Ariz. at 529, 862 P.2d at 902 (Kleinschmidt, J., dissenting).

We believe the statute is tightly drawn to avoid situations such as this, where the patient appears to have been committed primarily on the opinion and observations of one psychiatrist. We realize it may be more difficult and time consuming to find acquaintances of some patients facing involuntary commitment. Because such proceedings may result in a serious deprivation of liberty, however, the statutory requirements must be strictly adhered to.

We therefore hold that acquaintance witnesses may not include those who have participated in the psychological evaluation of the patient for commitment purposes. We do not mean to suggest that medical personnel who are not part of the evaluation process become ineligible to testify as acquaintance witnesses merely because of their expertise. In this regard, we agree with the court of appeals that "[n]othing in the statute requires that ... the [acquaintance] witnesses be lay witnesses" as opposed to experts. *In re Coconino County No. MH 1425*, 176 Ariz. at 528, 862 P.2d at 901. Here, however, the two mental health professionals who appeared as acquaintance witnesses had participated in the formal evaluation of the patient. Thus, they were ineligible to testify in such capacity and could only have been called as additional witnesses by petitioner or the court.

For the above reasons, we reverse the decision of the trial court and vacate the court of appeals opinion.

FELDMAN, C.J., MOELLER, V.C.J., and CORCORAN and MARTONE, JJ., concur.