54 P.3d 380

### In the Matter of MARICOPA COUNTY SUPERIOR COURT NUMBER MH 2001–001139.

No. 1–CA–MH 01–0010.

Court of Appeals of Arizona,
Division 1, Department C.

Sept. 26, 2002.

Richard M. Romley, Maricopa County Attorney by Marc Natelsky, Deputy County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Lawrence S. Matthew, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 Appellant seeks relief from an order of commitment for involuntary mental health treatment. We address issues concerning (1) the documents that must be served with a petition for court-ordered treatment under Arizona Revised Statutes ("A.R.S.") section 36–533(B) (Supp.2001), and (2) the qualifications for acquaintance witnesses pursuant to A.R.S. § 36–539(B) (1993).

### Pertinent Facts and Procedural History

¶ 2 On September 6, 2001, an Application for Involuntary Evaluation of appellant was filed pursuant to A.R.S. § 36–520 (1993). By statute, an application for evaluation is the means by which involuntary evaluation and eventually court-ordered treatment proceeds. It is the first in a series of procedural steps that must be taken before an individual can be involuntarily required to submit to court-ordered psychiatric evaluation and treatment. An application for evaluation may be made by "[a]ny responsible individual." A.R.S. § 36–520(A). The application for evaluation here was signed by Laura Abbas, a social worker, and notarized as the statute requires. A.R.S. § 36–520(C).

¶ 3 That same day the second procedural step was taken. Dr. William James filed a Petition for Court–Ordered Evaluation ("petition for evaluation") pursuant to A.R.S. § 36–523 (1993). The doctor alleged in the petition for evaluation that he had reasonable cause to believe that appellant had a mental disorder, was a danger to himself, was persistently or acutely disabled, and was unwilling to undergo voluntary evaluation. The petition for evaluation also set forth that appellant had a long history of mental illness in California, recently attempted suicide, and escaped from the hospital. Based on the petition for evaluation, the superior court issued a detention order the next day in order to permit the evaluation to be performed.

¶ 4 An evaluation of appellant was conducted. A court-ordered evaluation is a "professional multidisciplinary analysis" of the patient. A.R.S. § 36–501(11) (1993). By statute, the evaluation of the patient must be carried out by at least two licensed physicians and two other individuals, one of whom must be a psychologist (if available) or a social worker. *Id.* In this case, Dr. Carol Olsen and Dr. J. Luis Espinoza were the physician members who participated in the evaluation. The record provided us does not indicate the names of the other two members of the evaluation team.

¶ 5 On September 12, 2001, the next step was taken. Dr. James filed a Petition for Court–Ordered Treatment ("petition for treatment") pursuant to A.R.S. § 36–533. Affidavits from the physicians who participated in the evaluation, Dr. Olsen and Dr. Espinoza, were included in the petition for treatment pursuant to subsection (B) of that statute. A copy of the original application for evaluation submitted by Laura Abbas was not included.

¶ 6 The hearing on the petition for treatment was held on September 18, 2001. After the parties stipulated to the admission of the doctors' affidavits mentioned above, the state presented testimony from three acquaintance witnesses. Two of the witnesses were appellant's nurses during the time appellant was detained for evaluation. Appellant objected to their testifying as acquaintance witnesses. The judge overruled the objection. Appellant also testified on his own behalf. At the conclusion of the hearing, the trial court found

> by clear and convincing evidence that the patient is suffering from a mental disorder and, as a result, is a danger to self, persistently or acutely disabled, is in need of treatment and is either unwilling or unable to accept voluntary treatment.

¶ 7 Appellant brings two arguments on appeal: (1) the petition for treatment was

defective pursuant to § 36–533(B) as it was not accompanied by the application for evaluation submitted by Laura Abbas, and (2) the nurses who testified at the hearing were not "acquaintance witnesses" as mandated by A.R.S. § 36–539(B). We address each argument in turn.

### Discussion

■ ¶ 8 Because involuntary treatment proceedings may result in a serious deprivation of appellant's liberty interests, statutory requirements must be strictly met. *Matter of Alleged Mentally Disordered Person, Coconino County No. MH. 1425*, 181 Ariz. 290, 293, 889 P.2d 1088, 1091 (1995). Questions of statutory interpretation, in this setting, are reviewed *de novo. Koller v. Ariz. Dep't of Transp., Motor Vehicle Div.*, 195 Ariz. 343, 345, ¶ 8, 988 P.2d 128, 130 (App.1999). We have previously indicated that the statutory scheme at issue has been set forth with "precision and clarity." *In the Matter of the Appeal in Coconino County Mental Health No. MH 95–0074*, 186 Ariz. 138, 139, 920 P.2d 18, 19 (App.1996). Thus, it is in this context that we review the statutes at issue.

1. **Affidavit Requirement of A.R.S. § 36–533(B).**

■ ¶ 9 Appellant argues that the statutory scheme was not complied with because the application for evaluation did not accompany the petition for treatment. A.R.S. § 36–533(B) provides in pertinent part as follows:

The petition *shall be accompanied* by the affidavits of the two physicians who conducted the examinations during the evaluation period and by the *affidavit of the applicant for the evaluation, if any.*

(Emphasis added.) The state argues that the statute is complied with if an affidavit filed by the applicant for the evaluation is in the court file but need not "accompany" the petition for treatment itself. We disagree.

¶ 10 As noted in *MH 95–0074*, a key reason for the requirement of § 36–533(B) that the petition for treatment be accompanied by the referenced affidavits is to comply with the need to give notice to the person whose liberty is at issue. 186 Ariz. at 139, 920 P.2d at 19. In that case, we declined to broaden

or relax that requirement: "Given the liberty interest implicated in a court-ordered treatment proceeding, a more liberal reading of § 36–533 is precluded." *Id.* The same logic applies here.

¶ 11 The legislature has specifically indicated that the petition for treatment *"shall be accompanied . . . by the affidavit of the applicant for the evaluation, if any."* Thus, we hold that, in those cases where there is such an affidavit, it must "accompany" the petition for treatment and be served as part of that petition pursuant to A.R.S. § 36–536(A) (1993). Simply being present in the file does not suffice. We now turn to the issue whether there was such an affidavit in this particular case.

■ ¶ 12 We reiterate our prior holding from *MH 95–0074:*

The requirements of sections 36–533 and 36–536, indeed most of the provisions of Title 36, are set forth with precision and clarity. When the legislature has spoken with such explicit direction, our duty is clear.

186 Ariz. at 139, 920 P.2d at 19. Additionally, the primary purpose of statutory interpretation is to effectuate legislative intent. *Citadel Care Ctr. v. Ariz. Dep't of Revenue*, 200 Ariz. 286, 289, ¶ 11, 25 P.3d 1158, 1161 (App. 2001). The plain language of the statute is the best evidence of that intent. *City of Casa Grande v. Ariz. Water Co.*, 199 Ariz. 547, 554, ¶ 22, 20 P.3d 590, 597 (App.2001). If the statute's language is clear and unambiguous, we give effect to that language and do not apply any other rule of statutory construction. *Id.*

¶ 13 As to whether the application for evaluation is an affidavit, there are two key provisions in the phrase "the petition shall be accompanied . . . by the affidavit of the applicant for the evaluation, if any." Those provisions are "affidavit" and "if any."

¶ 14 An application for evaluation is a signed, notarized document, but does not require an affidavit. A.R.S. § 36–520(C). In fact there is no reference in § 36–520 to an affidavit. What appellant would have us do is to turn the phrase "affidavit of the appli-

cant for evaluation" into the phrase "application for evaluation." Appellant, in effect, urges that § 36–533(B) requires that the *application for evaluation,* as opposed to an *affidavit* signed by the applicant, must accompany the petition for treatment. We disagree.

¶ 15 In the first instance, as noted earlier, the statutory scheme at issue is carefully drawn and precise. The legislature is well aware that we have required parties to comply with its provisions with exactness given the liberty interests at issue. *MH 1425,* 181 Ariz. at 293, 889 P.2d at 1091. If the legislature had intended to require that the application for evaluation itself be attached to the petition for treatment, it would have so stated. It did not. Rather, it required that an "*affidavit* of the applicant for the evaluation, *if any* [,]" be attached. That brings us to the importance of the phrase "if any."

¶ 16 A second fundamental reason why we decline to construe the phrase "*affidavit* of the applicant for the evaluation" (emphasis added) to be the same as the *application* for evaluation itself is that § 36–533(B) includes the reference to "if any." The reference to "if any" makes it clear that the "affidavit of the applicant for the evaluation" is not a document that is required in order to receive court-ordered treatment. Such an affidavit must accompany the petition for treatment only if there is one. Appellant acknowledges this.

■ ¶ 17 On the other hand, the application for evaluation itself is *required* in order to receive court-mandated treatment. A.R.S. § 36–520. Thus, if we construe the phrase "the affidavit of the applicant for the evaluation, if any" to mean "the application for evaluation," we would render superfluous "if any." A cardinal rule of statutory interpretation is to avoid, if possible, an interpretation which renders superfluous any portion of a statute. *Estate of Ryan,* 187 Ariz. 311, 313–14, 928 P.2d 735, 737–38 (App.1996). If we accepted appellant's argument, we would violate that rule.

¶ 18 Thus, we do not find that the proceedings below were defective because the application for evaluation did not accompany the petition for treatment. The application for evaluation need not accompany the petition for treatment. And, for the reasons given above, we decline to treat the application for evaluation as an affidavit as referenced in § 36–533(B).

## 2. Acquaintance Witnesses Required by A.R.S. § 36–539(B).

■ ¶ 19 Appellant's second argument is that the two nurses who were called as acquaintance witnesses did not qualify under the statute. We also reject this argument.

¶ 20 Section 36–539(B) requires the following evidence to be presented at a hearing for court ordered treatment:

> The evidence presented by the petitioner or the patient *shall include the testimony of two or more witnesses acquainted with the patient at the time of the alleged mental disorder* and testimony of the two physicians who performed examinations in the evaluation of the patient.

A.R.S. § 36–539(B) (emphasis added). The state called three witnesses to testify as the acquaintance witnesses. As we mentioned earlier, two of them (Charles Roseick and Lucy Saunders) were nurses who provided care to appellant and observed him during the several weeks he was detained for the evaluation. These nurses provided input to the physicians who provided affidavits as part of the formal evaluation of appellant. The record does not indicate that these nurses were part of . the statutory evaluation team. A.R.S. § 36–501(11). Appellant argues, however, that these nurses' primary function was to assist the physicians in the evaluation process. Therefore, appellant asserts they are precluded from testifying as acquaintance witnesses.

¶ 21 Acquaintance witnesses as required by § 36–539(B) have been considered in the following settings: (1) expertise of the witness, *Pima County Mental Health Matter No. MH 862–16–84,* 143 Ariz. 338, 340, 693 P.2d 993, 995 (App.1984) (allowing a hospital nurse who had "frequent contact" with patient and "may have been more enlightened than the average person regarding hospitalization and treatment for mental disorders" to act as an acquaintance witness); (2) time

frame of acquaintance, *id.* ("The only requirement imposed by A.R.S. § 36–539(B) on such witnesses is that they be acquainted with the patient *at the time* of the mental disorder." (Emphasis added.)); (3) nurse at patient's hospital, *Matter of Commitment of an Alleged Mentally Disordered Person, No. MH–1360–1–84,* 145 Ariz. 81, 83, 699 P.2d 1312, 1314 (App.1985) (holding that a nurse at the patient's hospital who had not previously known the patient may be an acquaintance witness); and (4) mental health professionals whose sole knowledge of the patient was based on examining, or attempting to examine, the patient to prepare a written evaluation. *MH 1425,* 181 Ariz. at 292, 889 P.2d at 1090 (precluding two "professional mental health evaluators" retained to examine the patient from acting as acquaintance witnesses).

¶ 22 Appellant relies on *MH 1425* to support his argument. In that case, the two acquaintance witnesses were professional mental health evaluators who attempted to examine the patient. 181 Ariz. at 293, 889 P.2d at 1091. The two witnesses "met briefly" with the patient, but the patient "refused to answer their questions." *Id.* at 291, 889 P.2d at 1089. The witnesses submitted written reports, which were clearly "professional evaluations of petitioner's mental health." *Id.* However, the two witnesses "could offer no more perspective on the question [of the patient's mental health] than could the examining physicians who ... were not persons acquainted with the patient." *Id.* at 293, 889 P.2d at 1091 (citation omitted). The two witnesses were "retained to evaluate the mental health" of the patient. *Id.* at 291, 889 P.2d at 1089. In that setting, *MH 1425* held that "acquaintance witnesses may not include those who have participated in the psychological evaluation of the patient for commitment purposes." *Id.* at 293, 889 P.2d at 1091.

¶ 23 In this case, the two nurses called as acquaintance witnesses did have significant exposure to appellant's behavior, on a day-to-day basis, outside the formal evaluation process as defined by § 36–501(11). The facts here are much closer to *MH 862–16–84,* 143 Ariz. at 340, 693 P.2d at 995 (allowing nurses with "frequent contact" with a patient to

testify), than they are to *MH 1425.* Here, Nurse Roseick testified that he worked consistently with appellant as a care giver in the hospital for two and one-half weeks. Nurse Saunders had admitted appellant into the hospital and testified that she had been working with him consistently for four weeks. Both nurses testified as to their daily observations of appellant, outside any formal evaluation. Additionally, there is nothing in this record to suggest that these two nurses were part of the statutorily defined evaluation team as were the two disqualified acquaintance witnesses in *MH 1425.* They were not retained—as were the professional evaluators in *MH 1425*—to examine or evaluate the patient. Appellant was under these nurses' care because he was detained for the purpose of evaluation. The nurses' involvement was for the general care of the patient and not as formal participants in the evaluation process. Allowing the nurses here to testify as acquaintance witnesses is, in fact, consistent with *MH 1425:* "We do not mean to suggest that medical personnel who are not part of the evaluation process become ineligible to testify as acquaintance witnesses merely because of their expertise." 181 Ariz. at 293, 889 P.2d at 1091.

¶ 24 Our law provides that court-ordered "[c]ivil commitment cannot occur solely on the strength of physicians' recommendations." *MH 862–16–84,* 143 Ariz. at 340, 693 P.2d at 995 (citations omitted). The statutory mandate providing for acquaintance witnesses, in addition to mental health professionals evaluating the patient, is to prevent professionals from "rubber stamping" one another's work. *MH 1425,* 181 Ariz. at 292, 889 P.2d at 1090. The acquaintance witnesses give the court a perspective of the patient different from that of the professionals who examined the patient as part of the commitment evaluation process. *Id.*

¶ 25 The testimony provided by the nurses in this case did not "rubber stamp" a physician's evaluation. Instead, this acquaintance testimony offered the court the type of informal, day-to-day observation of appellant that the statute requires. These witnesses are clearly factually distinct from the would-be examiners in *MH 1425* who only "met brief-

ly" with patient after being retained to examine him pursuant to § 36–501(11). *Id.* at 291, 889 P.2d at 1089. Nurses Saunders and Roseick were permissible acquaintance witnesses in this case.

### Conclusion

¶ 26 For the foregoing reasons, we affirm the trial court's order for involuntary treatment.

CONCURRING: SUSAN A. EHRLICH, Presiding Judge, and PHILIP HALL, Judge.