69 P.3d 1017

### In the Matter of MARICOPA COUNTY SUPERIOR COURT NO. MH 2002–000767.

No. 1 CA–MH 02–0009.

Court of Appeals of Arizona, Division 1, Department B.

June 5, 2003.

Richard M. Romley, Maricopa County Attorney By Jean Rice, Deputy County Attorney, Phoenix, Attorneys for Appellee.

Maricopa County Public Defender, By Lawrence S. Matthew, Deputy Public Defender, Phoenix, Attorneys for Appellant.

### OPINION

IRVINE, Judge.

¶ 1 When a psychiatric resident conducts the mandatory examination of an individual

who is the subject of a petition for court-ordered, involuntary evaluation or treatment, Arizona Revised Statutes ("A.R.S.") section 36–501(11)(a) (2003) requires that the resident be supervised in the examination. We hold that although the supervising physician need not be physically present during the examination, the State must be able to present admissible evidence demonstrating that the resident was actually supervised by an attending physician with respect to the examination of that particular patient. No such evidence was presented in this case. We therefore vacate the trial court's decision and remand for proceedings consistent with this opinion.

## FACTS AND PROCEDURAL HISTORY

¶ 2 Dr. Carol Kline Olsen filed a petition for a court-ordered evaluation, asserting that the appellant was persistently or acutely disabled as a result of a mental disorder. Dr. Jasbir Bisla then filed a petition for court-ordered treatment, in which he also alleged that the appellant was persistently or acutely disabled due to a mental disorder. As required by A.R.S. § 36–520(B) (2003), Dr. Bisla and Dr. Habibur Rahman, a psychiatric resident, provided affidavits supporting the petition. Dr. Bisla's affidavit concluded that the appellant "presented very psychotic" and refused treatment while in jail. Dr. Bisla also noted that the appellant was "very vague and evasive and appear[ed] to be responding to internal stimuli."

¶ 3 Dr. Rahman stated in his affidavit that the appellant was "mumbling and constantly responding to his inner stimuli," and "unable to continue conversation," and that he exhibited "grandiose ideation." A resident supervision affidavit was also attached and signed by a doctor. The signature was illegible and the form did not specify which resident was under supervision, which patient was being examined, or which doctor was acting as the supervising psychiatrist.

¶ 4 The appellant moved to dismiss the petition for court-ordered treatment, arguing

that the incomplete resident supervision affidavit rendered the statutorily required affidavits invalid. At the hearing, the appellant's counsel argued that the supervising psychiatrist must attend the evaluation in person. Because Dr. Espinoza, the supervising psychiatrist, had not been present for the evaluation, counsel argued that the petition for court-ordered treatment was void. The State responded that the supervising psychiatrist is only required to discuss with the resident the resident's interview of the defendant and the intended contents of the affidavit and review the affidavit before it is submitted. After hearing argument, the trial court denied the motion.

¶ 5 The trial court then heard testimony from the appellant's psychiatric counselor at the Madison Jail, the appellant's case manager for mental health treatment, and a business acquaintance who had known the appellant for two years. The appellant also testified on his own behalf. At the conclusion of the testimony, the trial court stated that it had considered the petition for court-ordered treatment, the affidavits of Dr. Bisla and Dr. Rahman, and the evidence presented by the witnesses at the hearing. The trial court found that the appellant was persistently or acutely disabled due to a mental disorder; that the appellant was unwilling to accept voluntary treatment; and that there were no alternatives to court-ordered treatment. The court ordered that the appellant undergo a combined inpatient and outpatient treatment program until he was found to be no longer persistently or acutely disabled, but not to exceed 365 days. The appellant timely appealed. We have jurisdiction pursuant to A.R.S. § 36–546.01 (2003).

## DISCUSSION

¶ 6 The appellant raises two issues [1] on appeal:

1. Did the trial court err by denying the motion to dismiss when the supervising doctor did not attend the evaluation performed by the psychiatric resident?

---

1. The appellant raised a third issue, whether the trial court erred by denying the motion to dismiss the petition, because it did not include an affidavit from the applicant. In light of *In re*

*Maricopa County Superior Court No. MH 2001–001139*, 203 Ariz. 351, 54 P.3d 380 (App.2002), the appellant has withdrawn this argument.

2. Should the order for involuntary treatment be vacated because the State did not present the testimony of the physicians who evaluated the appellant?

We review questions of statutory interpretation de novo. *Mental Health Case No. MH 94–00592*, 182 Ariz. 440, 443, 897 P.2d 742, 745 (App.1995). "Because involuntary treatment proceedings may result in a serious deprivation of appellant's liberty interests, statutory requirements must be strictly met." *In re Maricopa Superior Court Number MH 2001–001139*, 203 Ariz. 351, 353, ¶ 8, 54 P.3d 380, 382 (App.2002).

## I. Supervising Psychiatrist

¶ 7 The appellant argues that the trial court erred in denying the motion to dismiss because the psychiatric resident who evaluated the appellant was not "supervised in the examination." Section 36–501(11)(a) provides, in pertinent part:

A psychiatric resident in a training program approved by the American medical association or by the American osteopathic association may examine the person in place of one of the psychiatrists *if he is supervised in the examination and preparation of the affidavit and testimony in court by a qualified psychiatrist appointed to assist in his training*, and if the supervising psychiatrist is available for discussion with the attorneys for all parties and for court appearance and testimony if requested by the court or any of the attorneys.

(Emphasis added.) The appellant argues that the statute requires the supervising psychiatrist to be physically present for the examination. In this case, the supervising psychiatrist was admittedly not present in the room when the resident interviewed the appellant.

¶ 8 The State argues that the dictionary definition of "supervision" does not explicitly require physical presence, citing *Webster's Encyclopedic Unabridged Dictionary of the English Language* 1429 (Portland House, New York 1989) ("To oversee . . . during execution or performance; superintend; have the oversight and direction of."). The State also argues that "the normal arrange-

ments and expectations in medical residency programs" allow residents to conduct various procedures outside the presence of the supervising physicians. Finally, the State contends that a psychiatric examination "is not similar to an invasive or a life-threatening procedure, such as a surgery" and that a discussion of the case after the resident's examination is sufficient.

¶ 9 "If the statute's language is clear and unambiguous, we give effect to that language and do not apply any other rule of statutory construction." *MH 2001–001139*, 203 Ariz. at 353, ¶ 12, 54 P.3d at 382. We must, however, "read the statute as a whole, and give meaningful operation to all of its provisions." *Matter of Commitment of Alleged Mentally Disordered Person*, 181 Ariz. 290, 292, 889 P.2d 1088, 1090 (1995) (quoting *Wyatt v. Wehmueller*, 167 Ariz. 281, 284, 806 P.2d 870, 873 (1991)).

¶ 10 The statute requires that the resident be enrolled "in a training program approved by the American medical association or by the American osteopathic association." A.R.S. § 36–501(11)(a). The State discusses at length the nature of the supervision in such programs. It appears that residents receive individual supervision and "that the attending physician shall determine the competency of each resident at any given point in time to provide patient care, and shall also determine how to best supervise the resident." It does not appear in the record before us, however, that the supervision required in a residency program always involves supervision with regard to each individual patient. We believe the Legislature intended to require something more than general supervision when it specified that a resident must be "supervised in the examination." The question before us is how to define that something more.

¶ 11 The statute requires that a resident be supervised in performing three distinct activities. A qualified psychiatrist must supervise the resident (1) in the examination, (2) in the preparation of the affidavit, and (3) in testimony in court. A.R.S. § 36–501(11)(a). The parties have offered no legislative history and we have found none. The Legislature added the provision regard-

ing residents to the statute in 1983. 1983 Ariz. Sess. Laws ch. 253, § 2. Prior to such amendment, both of the physicians examining the patient and reporting their findings had to be qualified psychiatrists, or at least experienced in psychiatric matters. A.R.S. § 36–501(8)(a) (1982).

¶ 12 We believe the Legislature intended to allow residents to be full participants in the involuntary treatment process. Not only does this further the education of the residents by preparing them for participation in legal proceedings that may arise in their later practices, but it reflects the realities of the role residents play in providing evaluation and treatment in a teaching hospital environment. Equally, the Legislature recognized that important liberty interests are at stake and that residents, although possessing medical licenses, are not yet fully qualified psychiatrists. It therefore required that they be supervised in both their examination of the patient and reporting their findings to the court. Recognizing that questions could arise about the opinions or qualifications of a particular resident, the Legislature also required that the supervising psychiatrist be available for discussions with the attorneys and for court appearances.

¶ 13 We interpret this requirement as an attempt to avoid turning each involuntary treatment hearing into a battle over the qualifications of the resident. *See State of Texas ex rel. L.C.F.*, 96 S.W.3d 651 (Tex.App.2003) (applying Rule 702 of the Texas Rules of Evidence to determine the qualifications of a psychiatric resident). If necessary, the supervising psychiatrist can explain how the resident used acceptable procedures, diagnostic criteria, and analysis in reaching a conclusion. A patient may disagree with the conclusion, and may present such disagree-

ment to the court. Nevertheless, the attention of the court should be on the patient, not on the resident.

¶ 14 The appellant argues that supervising the examination can only be done by being physically present during the examination. In the abstract, we see some merit in this argument. The affidavits submitted by the doctors in this case are largely descriptions of the appellant's conduct during the examination. Both doctors relied on phrases such as "vague," "unable to continue conversation," and "responding to his internal stimuli" to support their respective conclusions that the appellant was mentally ill. Although such observations would certainly be based on the training of the resident, they also rely to some extent on the subjective impressions of the doctor.

¶ 15 The State argues that in actual practice, a supervising psychiatrist is often not physically present for an examination by a psychiatric resident.[2] This may be true, but it is not controlling. The statutory requirements are not necessarily based on the standards of the medical profession. *See MH 94–00592*, 182 Ariz. at 447, 897 P.2d at 749 ("We are scrutinizing the sufficiency of the evidence to support the trial court's judgment, not the physician's professional conduct."). Although the statutory supervision requirement may be more time-consuming than the standard residency requirements, we must base our decision on the strict language of the statute.

¶ 16 Under the statute, a resident must be "supervised in the examination." The plain language of the statute does not require the physical presence of the supervising psychiatrist during the examination any

---

**2.** To support its argument that physical presence is not required, the State has provided us with literature explaining the general standards of residency programs. We do not believe this literature supports the State's argument. The standard of supervision varies by specialty field of practice and by experience of individual residents. Residents in various specialties may conduct certain procedures outside the presence of attending physicians. Nevertheless, the common thread running through the various residency programs is that the supervising physicians are present for critical aspects of certain procedures.

*See Boston Med. Ctr. Corp. & House Officers' Ass'n/Comm. of Interns & Residents*, 1999 WL 1076118 at *4, *37 (N.L.R.B. Nov.26, 1999) (noting that residents may perform some procedures independently, but that, for example, attending physicians must review radiology residents' interpretations of films, be present during critical parts of all surgical procedures performed by surgical residents, and review slides and diagnoses for pathology residents). It is arguable that the critical aspect of a psychiatric evaluation is the personal interview/examination by the physician.

more than it requires such presence during the preparation of the affidavit or the testimony in court. Although requiring physical presence would be a simple way of resolving the issue before us, the statute does not go that far. Therefore, we hold that a supervising psychiatrist need not be physically present during the examination of a patient by a resident.

¶ 17 This holding does not, however, answer the question of exactly what will constitute supervision in the examination under A.R.S. § 36–501(11)(a). The statute separately requires supervision in the examination. The State must be able to show that the supervising psychiatrist actually provided some supervision of the resident in the examination of the patient whose treatment is at issue.

¶ 18 The State argues that supervision may be accomplished in several ways:

> An interview, unlike a surgery, can be reviewed in retrospect, in a discussion between the resident and the attending physician, without creating a risk to the patient. The attending physician and the resident can discuss the interview and determine if the full range of appropriate subject matters has been addressed. If critical areas have not been completely covered, a subsequent interview could be scheduled. If needed, the attending physician could then accompany the resident. The conversation between the attending physician and the resident can cover more subjects than a review of facts and observations. The resident can explore tentative conclusions with the attending physician, and the attending physician can probe into the adequacy of the knowledge and information considered by the resident.

We agree that the approach described by the State would satisfy the statutory requirement that a resident be "supervised in the examination" of the patient. Actual physical presence during the examination may not be required, but, if called upon to do so, the State must be able to show that the supervising psychiatrist had some role in the actual examination of the patient by the resident.

¶ 19 We do not interpret the statute as requiring the State to prove the adequacy or quality of the supervision, only that supervision occurred. The Legislature did not set any minimum standard for the supervision and we will not impose one. As noted above, patients may disagree with a resident's conclusions, but, if the resident is actually supervised by an attending physician, questions raised about the quality of the supervision will only go to the weight to be given to the resident's opinion, not to its admissibility.

¶ 20 We believe that the statute intends that any questions about the resident's supervision first be addressed informally through discussions between the supervising psychiatrist and the attorneys for all parties. After such informal discussions, if counsel for the defendant has a good faith belief that the resident was not actually supervised in the examination, the trial court will have the discretion to determine the issue. This may require the supervising psychiatrist to testify at a hearing. The statute plainly anticipated this possibility by requiring the supervising psychiatrist to be available to testify in court.

¶ 21 Here, the appellant challenged the qualifications of the resident, but did not ask for testimony by the supervising psychiatrist. The parties focused only on whether the supervising psychiatrist must be physically present during the examination. Ordinarily, a failure by the defendant to ask for testimony by the supervising psychiatrist will constitute acceptance of the resident's qualifications. In this case, however, the appellant generally challenged the qualifications by alleging that the resident was not supervised in the examination. Because the parties quickly narrowed the issue to whether physical presence was required, the State did not present any evidence addressing how the resident was supervised by the supervising psychiatrist. Indeed, nothing in the record shows the nature or scope of supervision at all.

¶ 22 As noted above, the resident supervision affidavit was signed by the supervising psychiatrist without including either the name of the resident or the patient. In light of the significant liberty interests at stake in an involuntary treatment proceeding, and the

objection by the appellant, we believe this evidence is insufficient and the issue of the resident's supervision must still be addressed by the trial court. Therefore, we vacate the trial court's order for involuntary treatment and remand for the court to determine whether the resident was "supervised in the examination," as we have defined that term in this opinion.

## II. Affidavits of Physicians

¶ 23 At the evidentiary hearing, the trial court did not hear oral testimony of the evaluating physicians, but relied on their affidavits included in the petition for court-ordered treatment. The appellant did not object to the lack of oral testimony by the physicians. Section 36–539(B) (2003) states that "[t]he evidence presented by the petitioner ... shall include ... testimony of the two physicians who performed examinations in the evaluation of the patient." The parties may stipulate to the admission of an affidavit in place of the physician's testimony. *See, e.g., MH 94–00592*, 182 Ariz. at 442, 897 P.2d at 744 (noting that the parties stipulated to the admission of the affidavit into evidence); *MH 2001–001139*, 203 Ariz. at 352, ¶ 6, 54 P.3d at 381 (same). In the present case, the parties did not explicitly stipulate to the substitution of the affidavits for the doctors' testimony. The State argues that because the appellant did not object at any time during the hearing or when the court stated that its order was based on the affidavits, he has waived the issue.

¶ 24 The appellant argues that the requirements of A.R.S. § 36–539(B) are jurisdictional and cannot be waived. *See State v. Burchett*, 23 Ariz.App. 11, 13, 530 P.2d 368, 370 (1975). The appellant acknowledges that the parties may stipulate to the admission of an affidavit in place of the physician's testimony. Parties may not, however, stipulate to a jurisdictional defect. *See Mena v. Mena*, 14 Ariz.App. 357, 358, 483 P.2d 589, 590 (1971); *Jasper v. Batt*, 76 Ariz. 328, 332, 264 P.2d 409, 411 (1953).

¶ 25 We agree with the State. A defendant may require the physician's attendance and has the right to cross-examine the physician, but the defendant may waive that right

if it is not asserted before the trial court. The appellant has therefore waived the argument that the court should have required oral testimony from the two doctors by not objecting before the trial court.

### CONCLUSION

¶ 26 We hold that, if challenged, the State must be able to demonstrate that a psychiatric resident was actually supervised by a psychiatrist in the examination of the defendant, but the physical presence of the supervising psychiatrist is not required. Because the record in this case does not provide sufficient facts from which the trial court could conclude that a psychiatrist supervised the resident in the examination, we vacate the trial court's order for involuntary treatment and remand for further proceedings.

CONCURRING: JAMES B. SULT, Presiding Judge and LAWRENCE F. WINTHROP, Judge.