218 P.3d 1020

**In re MH 2008–001795.**

**No. 1 CA–MH 08–0049.**

Court of Appeals of Arizona, Division 1, Department C.

Sept. 29, 2009.

Andrew P. Thomas, Maricopa County Attorney, by Anne C. Longo, Deputy County Attorney, Victoria Mangiapane, Deputy

---

County Attorney, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender by Tennie B. Martin, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

WINTHROP, Judge.

¶ 1 Appellant, a twenty-year-old male, seeks relief from an order committing him to involuntary mental health treatment. Specifically, he argues that the superior court erred in finding a psychiatric resident physician with a one-year training permit qualifies as a "licensed physician" for the purpose of completing a petition for court-ordered evaluation. For the reasons set forth below, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶ 2 On August 4, 2008, Appellant's sister, his legal guardian, filed an application for involuntary evaluation. Her application stated that Appellant was taking psychiatric medication and was subject to angry outbursts, wandering, and complaints of excessive thirst. As a result of this application, on August 6, 2008, Dr. Sami Ahad, a first-year psychiatric resident physician holding a one-year training permit, petitioned the Maricopa County Superior Court for an involuntary mental health evaluation of Appellant. Subsequently, the court entered a detention order and Desert Vista Behavioral Health Center admitted Appellant for court-ordered evaluation.

¶ 3 On August 11, 2008, after two physicians performed separate evaluations, Dr. Michael Hughes, deputy medical director of Desert Vista Behavioral Health Center, filed a petition for court-ordered treatment, which was served on Appellant. On the same day, Appellant filed a "motion to dismiss proceedings." In his motion, Appellant argued that Dr. Ahad was not a "licensed physician" under the applicable statute and therefore was not qualified to file a petition for evaluation.

¶ 4 On August 15, 2008, the superior court denied Appellant's motion to dismiss and, following an evidentiary hearing, ordered that Appellant undergo combined inpatient and outpatient treatment for a period not to exceed 365 days, with inpatient treatment not to exceed 365 days.

¶ 5 Appellant filed a timely notice of appeal, and we have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") sections 12–2101(K) (2003) and 36–546.01 (2009).[1]

## ANALYSIS

¶ 6 The essential characteristics of the statutory scheme in Arizona for a civil commitment proceeding are as follows: To begin a civil commitment proceeding, a "responsible individual" applies for a court-ordered evaluation of another individual. A.R.S. § 36–520(A) (2009).[2] The application must allege that the person is, "as a result of a mental disorder, a danger to self or others, persistently or acutely disabled, or gravely disabled" and also that the person "is unwilling or unable to undergo a voluntary evaluation." *Id.* The statute prescribes the proper form for the application, which is submitted to the screening agency for review. A.R.S. § 36–520(B). Upon receipt of the application, the screening agency reviews the application to determine whether reasonable cause exists to believe that the person is persistently or acutely disabled, gravely disabled, or likely to present a danger to self or others. A.R.S. § 36–521(A) (2009). If reasonable cause exists, the agency prepares and files a petition for court-ordered evaluation. A.R.S. § 36–521(D). The petition must contain certain elements, including the allegation that the proposed patient is, as a result of a mental disorder, a danger to self

1. Appellant appeals from a treatment order that has expired; therefore this appeal is moot. We may consider issues that are moot when they are "of great public importance or are capable of repetition yet evading review." *In re MH 2005–001290*, 213 Ariz. 442, 443, ¶ 7, 142 P.3d 1255, 1256 (App.2006). Given the liberty interest at stake and the high probability of repetition, we elect to decide this appeal on its merits.

2. We cite the current version of the applicable statutes because no revisions material to this decision have since occurred.

or others, persistently or acutely disabled, or gravely disabled, and unwilling or unable to undergo voluntary evaluation. A.R.S. § 36–523(A)(4) (2009). The petition must also state the facts upon which that belief is based. A.R.S. § 36–523(A)(5). The court subsequently reviews the petition for evaluation and determines if reasonable cause exists, in which case the court orders an evaluation. A.R.S. § 36–529(B) (2009).

¶ 7 The court-ordered evaluation is "a professional multidisciplinary analysis based on data describing the person's identity, biography and medical, psychological and social conditions," and must be carried out by a group of persons as described in A.R.S. § 36–501(12) (2009). That statute requires examination by "[t]wo licensed physicians, who shall be qualified psychiatrists, if possible, or at least experienced in psychiatric matters." A.R.S. § 36–501(12)(a). The statute also explicitly mentions the role that psychiatric residents in training may play in the court-ordered evaluation. *Id.* Specifically, a resident "may examine the person in place of one of the psychiatrists if he is supervised in the examination and preparation of the affidavit and testimony in court by a qualified psychiatrist appointed to assist in his training." *Id.* A court-ordered evaluation conducted on an inpatient basis must be completed in less than seventy-two hours. A.R.S. § 36–530(B) (2009). If the evaluators determine that the person is a danger to self or others, they may file a petition for court-ordered treatment. A.R.S. § 36–531(B). Under A.R.S. § 36–540 (2009), the maximum period of inpatient treatment that the court may order ranges from ninety days for a person found to be a danger to self to 365 days for a person found to be gravely disabled.

■ ¶ 8 In this case, we address whether a psychiatry resident with a one-year license has the authority to file a petition for evaluation, the precursor to the court-ordered evaluation. Because involuntary treatment proceedings may result in a serious deprivation of a person's liberty interests, statutory requirements must be strictly construed and scrupulously followed. *In re Maricopa County Superior Court No. MH 2001–*

*001139*, 203 Ariz. 351, 353, ¶ 8, 54 P.3d 380, 382 (App.2002). When addressing an issue of statutory interpretation, our review is de novo. *State v. Ontiveros*, 206 Ariz. 539, 541, ¶ 8, 81 P.3d 330, 332 (App.2003).

¶ 9 Appellant alleges that a petition for evaluation must be completed by a medical director and that Dr. Ahad does not qualify under the statutory definition. Neither A.R.S. § 36–523, which prescribes the content of a petition for evaluation, nor A.R.S. § 36–521(H), which describes the procedures for pre-petition screening, specify that the petitioner be a medical director. Rather, A.R.S. § 36–521(H) specifies only that "[t]he petition shall be made in the form and manner prescribed by the deputy director." The "deputy director" is the deputy director of the division of behavioral health in the Arizona Department of Health Services. A.R.S. § 36–501(8). The deputy director has codified the form and manner of the petition for court-ordered evaluation in the Arizona Administrative Code ("A.A.C.") at R9–21–501 and its accompanying Exhibit A, "Application for Involuntary Evaluation" and Exhibit B, "Petition for Court–Ordered Evaluation." The form prescribed for the Petition for Court–Ordered Evaluation, Exhibit B of the A.A.C., contains a blank line for filling in the name of the petitioner, identified as "medical director." The A.A.C. does not, however, provide a definition of medical director. For that definition, we return to A.R.S. § 36–501(24), which defines "medical director" as "a psychiatrist, or other licensed physician experienced in psychiatric matters." It is undisputed that Dr. Ahad does not qualify as a psychiatrist. The question is whether he is a "licensed physician" for the purpose of submitting a petition for court-ordered evaluation.

¶ 10 A "licensed physician" is defined as a medical doctor or doctor of osteopathy who is "licensed in this state." A.R.S. § 36–501(23). To qualify for a license to practice medicine in Arizona, a person must comply with the requirements set forth in A.R.S. §§ 32–1422 to –1426 (2008 & Supp. 2008). The basic statutory requirements include graduating from an approved medical school and successfully completing an approved twelve

month internship, residency, or clinical fellowship program. *Id.* Additionally, A.R.S. § 32–1432.03 (2008) allows the executive director of the Arizona Medical Board to grant a "one year training permit" to a person who participates in a program at an approved medical school or hospital, pays a fee, and includes a written statement from the dean of the school or chairman of the hospital's graduate medical education program that provides the name of a doctor who will "provide appropriate supervision of the participant." *Id.* The statute also specifies that the training permit holder "may serve as a member of an organized medical team but shall not practice medicine independently." A.R.S. § 32–1432.03(3)(d).

¶ 11 Appellant relies on *In the Matter of Maricopa County Superior Court No. MH 2003–000058*, 207 Ariz. 224, 84 P.3d 489 (App. 2004), as support for the proposition that a temporary permit holder is not a "licensed physician" within the meaning of A.R.S. § 36–501. We disagree, and find that case distinguishable in two important ways. First, that case addressed the role of residents in the preparation of a petition for court-ordered treatment, not the preliminary petition for evaluation. Second, in that case, residents evaluated the patient and prepared both required affidavits under the supervision of other residents. Not only is the petition at issue here a petition for evaluation and not a petition for court-ordered treatment, but Dr. Ahad was a resident and permit holder working under the supervision of the medical director, not a fellow resident. He was not practicing independently.

¶ 12 We agree with the superior court that the temporary permit grants a qualified license to practice when the resident physician is properly supervised by a licensed physician. In this case, Dr. Ahad was not working independently; rather, he was working under the direction of the medical director herself and was therefore working within the bounds of his qualified license when he filed the petition for court-ordered evaluation.

¶ 13 Further, we reject any argument that the legislature's silence on the role of residents in the petition for court-ordered evaluation process should be construed as precluding residents from participation. The legislature has designated the role that a one-year permit holder may play in the court-ordered treatment process, while remaining silent as to the permit holder's role in other aspects of the civil commitment process, including the pre-evaluation stage. *See* A.R.S. § 36–501.12(A). Once the court has ordered an evaluation, a psychiatric resident in an approved training program "may examine the person in place of one of the psychiatrists if he is supervised in the examination and preparation of the affidavit and testimony in court by a qualified psychiatrist appointed to assist in his training." *Id.* Appropriate "supervision" under the statute does not require that the supervising physician be present during the examination; it only requires a showing that the supervising psychiatrist had "some role in the actual examination of the patient by the resident." *In re Maricopa County Superior Court No. MH 2002–000767*, 205 Ariz. 296, 300, ¶ 18, 69 P.3d 1017, 1021 (App.2003). We have difficulty concluding that the legislature would expressly approve a role for residents in the court-ordered evaluation process, where potentially a year of liberty is at stake, *see* A.R.S. § 36–540(D), but, through legislative silence, not allow the supervised participation of residents in the pre-evaluation stage where, at most, seventy-two hours of liberty is at stake. *See* A.R.S. § 36–530(B).

¶ 14 As a psychiatry resident working under a temporary permit, Dr. Ahad would have been allowed, under A.R.S. § 36–501.12(A), to submit an affidavit to the court in support of a petition for court-ordered treatment. The bounds of his participation are outlined in detail in A.R.S. § 36–501.12(A). Although the petition for court-ordered evaluation stage of the proceedings is an important phase of the civil commitment proceeding, we reject Appellant's argument that Dr. Ahad, as a temporary permit holder, could be assigned a role in the evaluation of a patient for purposes of a petition for court-ordered treatment, but not in the petition for evaluation stage.

## CONCLUSION

¶ 15 For the foregoing reasons, we affirm the superior court's findings and order for treatment.

CONCURRING: PETER B. SWANN, Presiding Judge and MICHAEL J. BROWN, Judge.