693 P.2d 993

In the Matter of the APPEAL IN PIMA COUNTY MENTAL HEALTH MATTER NO. MH 862–16–84.

No. 2 CA–CIV 5102.

Court of Appeals of Arizona, Division 2.

Dec. 26, 1984.

Frederic J. Dardis, Pima County Public Defender by Katherine Markoulis, Tucson, for appellant.

Stephen D. Neely, Pima County Atty. by Thomas E. Dugal, Tucson, for appellee.

## OPINION

HOWARD, Judge.

This is a mental health civil commitment case. The issue before us on appeal is whether, under A.R.S. § 36–539(B), a nurse who worked at the hospital where appellant was treated was a proper witness to testify at the commitment hearing as a person "acquainted with the patient at the time of the alleged mental disorder." We find no violation of the statute. Accordingly, we affirm the order of the court below committing appellant to involuntary treatment.

Appellant had a long psychiatric history of depression accompanied by suicidal thoughts and actions. These problems eventually led to civil commitment proceedings in January 1984. For several months prior to the hearing, appellant had a number of admissions to the Kino Hospital Psychiatric Unit. Those episodes consisted of her voluntarily admitting herself to the hospital, undergoing treatment for a few days, and then being released. For example, in October 1983 appellant admitted herself because she had thoughts of purchasing a handgun for self-destruction. Twice in December she admitted herself because she was having suicidal thoughts. During this period of time, appellant was also receiving treatment from a therapist at La Frontera, an outpatient clinic. Josefina Ahumada, a psychiatric social worker at the hospital, and a member of the hospital's community network team, coordinated appellant's treatment plan between the hospital and the outpatient clinic. Ahumada had frequent contact with appellant by telephone and in person. During the time that Ahumada maintained contact with appellant, appellant's condition appeared to deteriorate. Finally, on January 12, 1984, when appellant called to tell Ahumada that she had washed her face with a caustic chemical, Ahumada became alarmed, drove to appellant's home, and took her to the hospital. On the way to the hospital, appellant discussed killing herself as a means to rejoin her deceased mother. Appellant was voluntarily admitted to the hospital. She remained there for several days on a voluntary basis, but when she announced that she intended to leave, one of the psychiatrists filed an application for emergency admission and a petition for evaluation which gave rise to the civil commitment proceedings.

At the hearing on January 27, 1984, the testimony of two psychiatrists and two additional witnesses was presented. The two additional witnesses were Ahumada, who testified regarding her various contacts

with appellant, and Mary Thompkins, a nurse at Kino Hospital who had frequent contact with appellant beginning with appellant's admission to the hospital on January 12. Thompkins testified that on the day of that admission, appellant was banging her head against a wall and had to be restrained. Appellant had a red, bloody area on her forehead. She was saying, "Let me die." Appellant also stated that she was afraid, and did not know any reason to live.

Based upon the testimony of all the witnesses, the court found by clear and convincing evidence that appellant had a mental disorder and was in grave danger of harming herself if not treated. The court then ordered appellant to undergo treatment.

Appellant does not contest the propriety of Ahumada's testimony. Accordingly, we question only whether Thompkins was a proper witness under A.R.S. § 36–539(B).

■ Civil commitment cannot occur solely on the strength of physicians' recommendations. A.R.S. § 36–539(B); *In the Matter of Burchett*, 23 Ariz.App. 11, 530 P.2d 368 (1975). The statute provides that the testimony presented by the petitioner shall include not only the testimony of the two physicians who evaluated the patient, but also the testimony of two other witnesses "acquainted with the patient at the time of the alleged mental disorder." A.R.S. § 36–539(B).

Appellant argues that hospital personnel are biased as a result of their employment, and that for that reason Thompkins did not qualify as one of the two witnesses required to testify in addition to the evaluating physicians. According to appellant, the statute should be construed to limit the non-physician witnesses to those who knew the patient before she entered the hospital. We disagree.

Subsection B of A.R.S. § 36–539 does not preclude hospital lay personnel from testifying at civil commitment proceedings. The only requirement imposed by A.R.S. § 36–539(B) on such witnesses is that they be acquainted with the patient at the time of the mental disorder.

In this case, Thompkins testified that she had frequent contact with appellant since appellant's admission on January 12 and, in fact, had acted several times as appellant's staff coordinator. At the hearing, Thompkins described appellant's physical appearance and behavior.

■ In attacking this testimony, appellant argues that the testimony of hospital lay witnesses is unreliable because such persons are "under the thrall" of the physicians. However, as the trial court pointed out at the hearing, the bias of a witness goes to the weight of the testimony but not to its admissibility.

The history of A.R.S. § 36–539(B) is instructive on the purpose of the lay testimony. Formerly numbered § 36–514(B), the statute provided, in pertinent part:

"[T]wo or more witnesses acquainted with the proposed patient at the time of the alleged mental illness ... shall be examined on oath as to the conversation, manners and general conduct of the proposed patient."

See *In the Matter of Burchett*, supra.

■ The former statute clearly distinguished the roles of the expert and the lay witnesses. The function of the two lay witnesses was to attest to the general demeanor of the proposed patient. The only requirement was that each lay witness have been acquainted with the subject of the involuntary commitment action during the time of the alleged mental illness. The lay witness was not called upon to testify on the basis of any particular expertise. We think the current statute should be interpreted in the same manner. Although Thompkins may have been more enlightened than the average person regarding hospitalization and treatment for mental disorders, her testimony described only appellant's physical appearance, conversation, and general conduct while hospitalized—factors to which any witness having had frequent contact with appellant during that time could have attested.

Moreover, allowing hospital personnel to testify as lay witnesses in cases like this one makes sense. Appellant, who lived alone, apparently shared her abnormal thoughts and behavior with counselors and hospital personnel only. In such a case, to require that only non-hospital lay witnesses testify at civil commitment hearings would necessitate the dismissal of cases like this one, thus preventing the patient from receiving needed treatment.

The court below properly allowed Thompkins to testify in this case. We affirm the order of the trial court.

BIRDSALL, C.J., and HATHAWAY, J., concur.