219 P.3d 242

**In re MH 2008–002596.**

**No. 1 CA–MH 09–0003.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 20, 2009.

---

Andrew P. Thomas, Maricopa County Attorney By Anne C. Longo, Deputy County Attorney, Civil Division, Roberto Pulver, Deputy County Attorney, Civil Division, Phoenix, Attorneys for Appellee.

James J. Haas, Maricopa County Public Defender By Edith M. Lucero, Deputy Public Defender, Phoenix, Attorneys for Appellant.

## OPINION

BARKER, Judge.

¶ 1 Appellant seeks relief from an order of commitment for involuntary mental health treatment. We address in this opinion the qualifications for acquaintance witnesses pursuant to Arizona Revised Statutes ("A.R.S.") section 36–539 (2009). Appellant requests that we establish an arbitrary number of encounters or minimum period of time over which a witness must have been acquainted with one for whom commitment is sought before the witness may function as an acquaintance witness under the statute. For the following reasons, we reject this request and affirm.

### *Facts and Procedural History*

#### 1. *Petition for Court–Ordered Evaluation*

¶ 2 On November 10, 2008, Dr. Andrea Raby petitioned the superior court for an involuntary mental health evaluation of Appellant. Dr. Raby found reasonable cause to believe that Appellant was a danger to himself and that Appellant had refused voluntary evaluation because he did not feel he needed treatment. The petition alleged Appellant had shown poor insight into his current condition, had minimized his past suicide attempts, and had stated that his body was "unable to [overdose] on medication." It also noted that Appellant's case was managed through Magellan Behavioral Health Services and that he was "prescribed multiple psychotropic medications" for a "mood disorder, not otherwise specified."

¶ 3 Along with Dr. Raby's petition, E.G., a Crisis Specialist at the Maricopa Crisis Re-

covery Network, submitted applications for involuntary evaluation and emergency admission for evaluation. According to E.G., she took a crisis intervention call from Appellant in which he told her he overdosed on Librium, Prozac, Loxapine, and alcohol. E.G. reported that she offered medical intervention, but Appellant replied that if the fire department came, he would provide inaccurate information to the responders, and then he disconnected the call.

### 2. Petition for Court–Ordered Treatment

¶ 4 On November 14, 2008, Kamala Premkumar, M.D., deputy medical director at the Maricopa Medical Center, filed a petition for court-ordered treatment. Dr. Premkumar alleged that Appellant was persistently or acutely disabled and a danger to himself. She stated that Appellant was unwilling or unable to accept treatment voluntarily and requested that he receive combined inpatient and outpatient treatment.

¶ 5 In an affidavit accompanying the petition, Dr. Premkumar stated that Appellant's "insight and judgment are very much impaired." She stated that Appellant denied all the allegations in the petition and any current medical problems, and he minimized his symptoms. In addition, Dr. Premkumar related that Appellant denied any history of drug abuse, but his record shows a history of polysubstance abuse and alcohol abuse, including use of marijuana, PCP, heroin, cocaine, methamphetamine, and LSD. Dr. Premkumar noted that Appellant had received psychiatric treatment since 1990, had been diagnosed with Obsessive Compulsive Disorder, had been on medications, and had been hospitalized about fifteen to twenty-five times due to his impaired mental health, including past suicide attempts by cutting his left wrist and overdosing on psychotropics. Dr. Premkumar found that Appellant was depressed, but that Appellant did not believe he was mentally ill and denied any suicide attempts. She also noted that Appellant was unwilling to cooperate with treatment on a voluntary basis and his "capacity to make an informed decision … [wa]s significantly impaired." She recommended inpatient treatment "to safely stabilize [Appellant's] mood and address his repeated suicide attempts."

¶ 6 Dr. Andrew Parker also evaluated Appellant and submitted an affidavit stating Appellant was a danger to himself and persistently or acutely disabled. Dr. Parker noted that Appellant was a "vague historian, guarded, and non-disclosing," and that his "judgment [wa]s not intact." Appellant admitted to Dr. Parker that he had a chemical imbalance and was in need of treatment, but denied any danger to himself or others. Appellant admitted to being in a psychiatric facility "seven or eight times." According to Dr. Parker, when Appellant was evaluated at the Urgent Care Center his behavior was "very manic and anxious … loud and cursing in speech, inappropriate, with insight and judgment considered poor." Dr. Parker also noted that Appellant was "incapable of having good judgment, reasoning, or capacity to recognize reality." Dr. Parker opined that with treatment "this patient could likely function in an outpatient setting … with inpatient as an alternative should he decompensate."

¶ 7 The superior court issued a detention order and a notice of hearing.

### 3. Hearing on Contested Petition

¶ 8 At the hearing on November 20, 2008, counsel stipulated to the admission of the doctors' affidavits and addenda and medication affidavit in lieu of their testimony.[1] Appellant was present at the hearing but did not testify. E.G. testified at the hearing. She said Appellant called the Crisis Recovery Network with slurred speech and told her he had drunk two beers, taken eight Librium, Prozac, and some other medications. E.G. contacted Poison Control after Appellant confirmed that he had taken more Librium than he was prescribed. Appellant told E.G. that "he would lie to them," and he used a "lot of profanities in speaking." The phone call lasted around fifteen minutes.

---

1. We note that the superior court did not have a colloquy with the patient as to whether the patient understood and would have agreed to the stipulation to waive live testimony from the physicians. We do not address that issue as it was not raised on appeal.

¶ 9 T.L., Appellant's case manager at Magellan Behavioral Health, also testified at the hearing. He said that he visited Appellant often in his home because it was a struggle to have Appellant show up to appointments. T.L. related that Appellant was prescribed medication and that he took it as prescribed, but was otherwise not very cooperative with his treatment. T.L. testified that Appellant had periods of "behavioral issues" when he called the crisis line often out of boredom. It was T.L.'s opinion that Appellant would benefit from court-ordered treatment so he could receive the right treatment.

¶ 10 The superior court found by clear and convincing evidence that Appellant, as a result of a mental disorder, was a danger to self and persistently and/or acutely disabled and unwilling or unable to accept voluntary treatment. The court ordered involuntary treatment in a combined inpatient-outpatient program not to exceed 365 days, with the inpatient treatment not to exceed 180 days. The court found "that there [were] no appropriate and available alternatives [to] court-ordered treatment."

¶ 11 Appellant filed a timely notice of appeal. We have jurisdiction pursuant to A.R.S. § 36–546.01 (2003).

### Discussion

¶ 12 Appellant alleges that E.G. did not qualify as an acquaintance witness under A.R.S. § 36–539(B) (2003) because her contact with Appellant was limited to one fifteen-minute telephone conversation. "Because involuntary treatment proceedings may result in a serious deprivation of the [A]ppellant's liberty interests," statutory requirements must be strictly construed and followed. *In re Maricopa County Superior Court No. MH 2001–001139*, 203 Ariz. 351, 353, ¶ 8, 54 P.3d 380, 382 (2002); *In re Maricopa County Superior Court No. MH 2003–000058*, 207 Ariz. 224, 227, ¶ 12, 84 P.3d 489, 492 (App.2004). Clear and convincing evidence of the statutory requirements must be provided. *In re Mental Health Case No. MH 94–00592*, 182 Ariz. 440, 445, 897 P.2d 742, 747 (App.1995). This standard is "proof that will produce in the mind of the trier of facts a firm belief or conviction as to the

issue sought to be proved." *State v. Cañez*, 202 Ariz. 133, 156, ¶ 76, 42 P.3d 564, 587 (2002) (quoting *State v. Turrentine*, 152 Ariz. 61, 68, 730 P.2d 238, 245 (App.1986)); *State v. Leonardo*, 161 Ariz. 111, 112, 776 P.2d 789, 790 (1989). On appeal we view the facts in the light most favorable to sustaining the trial court's judgment and will not set aside the related findings unless they are clearly erroneous. *In re MH 94–00592*, 182 Ariz. at 443, 897 P.2d at 745.

¶ 13 Section 36–539(B) requires the following evidence be presented for court ordered treatment:

> The evidence presented by the petitioner or the patient *shall include the testimony of two or more witnesses acquainted with the patient at the time of the alleged mental disorder* and testimony of the two physicians who performed examinations in the evaluation of the patient.

A.R.S. § 36–539(B) (emphasis added). Appellant argues on appeal that the fifteen-minute phone call did not provide E.G. sufficient contact with Appellant in order to qualify E.G. as an acquaintance witness within the meaning of the statute. However, Appellant reads requirements into the statute that do not exist in its plain language. *See State v. McDermott*, 208 Ariz. 332, 334, ¶ 5, 93 P.3d 532, 534 (App.2004) (holding that when the language of a statute is clear and unambiguous, we give it effect).

¶ 14 Appellant relies on *In re Pima County Mental Health Matter No. MH 862–16–84*, 143 Ariz. 338, 693 P.2d 993 (App.1984), to support his argument. In that case, this court held that a nurse who worked at the hospital where the patient was treated could testify as an acquaintance witness. *Id.* at 339, 693 P.2d at 994. In making this determination, the court noted that the nurse had "frequent contact" with the patient and stated that the "function of the two lay witnesses was to attest to the general demeanor of the proposed patient." *Id.* at 340, 693 P.2d at 995. Appellant argues that these statements invoke a frequency-of-contact requirement into the statute not satisfied by one fifteen-minute phone call. This assertion, however, ignores the court's observation that the only time requirement imposed by § 36–539(B) is

that the witness be acquainted with the patient at the time of the mental disorder. *Id.*

¶ 15 We hold that Appellant's interpretation of *In re MH 862–16–84* is misplaced because it focuses solely on the length of time that the witness was acquainted with the patient (or the number of times the witness saw the patient) rather than the nature and relevance of the witness's testimony. "A witness is a person whose declaration under oath or affirmation is received as evidence for any purpose." Ariz. R. Civ. P. 43(a). Witnesses may not testify unless they have "personal knowledge of the matter." Ariz. R. Evid. 602. Further, what a witness has to say, even if he or she has personal knowledge, is only admissible if it is relevant to the matter at hand: "Evidence which is not relevant is not admissible." Ariz. R. Evid. 402. " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Ariz. R. Evid. 401.

¶ 16 These general principles are as applicable in a mental health proceeding as they are in a civil action. Ariz. R. Evid. 1101(b) (rules of evidence apply to civil actions and proceedings); *In re Pima County Mental Health Matter No. MH 863–4–83*, 145 Ariz. 284, 284, 700 P.2d 1384, 1384 (App.1985) ("An action to commit one for mental health treatment is a civil action."). Applying these rules here, it is clear that E.G. qualifies as a witness under § 36–539(B). The statute requires the testimony of "two or more witnesses acquainted with the patient at the time of the alleged mental disorder." A.R.S. § 36–539(B). Black's Law Dictionary defines "acquainted" as "[h]aving personal, familiar, knowledge of a person, event, or thing." Black's Law Dictionary 16 (6th ed. 1991). The further statutory requirement in § 36–539(B) is that the "acquaintance" (or to use synonyms, the "knowledge" or "familiarity") of the patient be "at the time of the alleged mental disorder." This is essentially the same requirement that our rules of evidence impose: personal knowledge (Rule 602) that is relevant (Rule 402) in determining the matter at hand (Rule 401), i.e.,

whether the patient has the mental defect alleged.

¶ 17 It is clear that E.G. met this standard. In the telephone conversation that Appellant had with E.G., Appellant informed her that he had overdosed on medications and that he would refuse help by lying to first responders. This is precisely the type of information that is called for by the statute: first hand knowledge of the patient at the time the patient allegedly suffers from a mental disorder. The statute does not impose a specific length of time over which the acquaintance or familiarity with the patient must take place or the manner in which the witness's familiarity with the patient must be acquired. Just as in a civil trial, the test is whether the witness has personal knowledge and whether it is relevant.

¶ 18 An example helps make the point. *In re Andrew C.*, 215 Ariz. 366, 370, ¶ 21, 160 P.3d 687, 691 (App.2007) ("[H]ypothetical examples shed light on the viability, or lack thereof, of an asserted legal principle."). Assume Jack is sitting in a country club lounge when Matt enters. Matt is distraught. He pulls out a gun, mutters "I just can't take this any longer," and shoots himself in the chest. The total exchange takes thirty seconds or less. Jack sees and hears it all. Matt somehow survives and the State seeks involuntary commitment. Jack is called as an acquaintance witness under § 36–359(B). Even though Jack's "acquaintance" with Matt was only thirty seconds or less, he clearly qualifies as an acquaintance witness. The information to which Jack will testify is (1) based on personal knowledge and (2) clearly relevant to whether Matt has a mental disorder. In the language of the statute, Jack was "acquainted" with Matt "at the time of the alleged disorder." It is hard to imagine a more relevant witness, even though the length of the "acquaintance" was brief.

¶ 19 E.G. meets the same standard as Jack in the hypothethical just given. To exclude E.G. as an acquaintance witness would be to exclude the very type of witness that the statute calls for and from whom the trier of fact needs to hear to determine the case. Simply because the information was gathered over a fifteen-minute period of time

is no basis for exclusion. Though time may be a factor,[2] it is not dispositive: the nature and relevance of the witness's testimony are controlling. *See MH 862–16–84*, 143 Ariz. at 340, 693 P.2d at 995 (holding that "the bias of a witness goes to the weight of the testimony but not to its admissibility"). As a result, the superior court did not err in allowing E.G. to testify as an acquaintance witness.

### Conclusion

¶ 20 Based on the foregoing, we affirm the court's order of September 18, 2008, requiring Appellant to undergo involuntary mental health treatment.

CONCURRING: DIANE M. JOHNSEN, Presiding Judge and MAURICE PORTLEY, Judge.

---

**2.** In *In re MH 2001–001139*, we utilized the length of time that nurses were acquainted with the patient as a factor to determine whether they were sufficiently acquainted to qualify under the statute. *In re MH 2001–001139*, at 355–56, ¶¶ 21–25, 54 P.3d at 384–85. In that case, there was no particular event or occurrence, such as the conversation here, that went to the nurses' knowledge "at the time of the alleged mental disorder." A.R.S. § 36–539(B). Rather, their testimony was based on "informal, day-to-day observation of appellant," *In re MH 2001–001139*, 203 Ariz. at 355, ¶ 25, 54 P.3d at 384, for which the length of observation was much more pertinent.