NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS

### DIVISION ONE

IN RE: MH2024-008242

No. 1 CA-MH 24-0188

FILED 04-20-2026

Appeal from the Superior Court in Maricopa County
No. MH2024-008242
The Honorable Terri L. Clarke, Commissioner

**AFFIRMED**

COUNSEL

Maricopa County Attorney's Office, Phoenix
By Sean M. Moore
*Counsel for Appellee*

Maricopa County Legal Defender's Office, Phoenix
By Robert S. Shipman
*Counsel for Appellant*

---

**MEMORANDUM DECISION**

---

Chief Judge Randall M. Howe delivered the decision of the Court, in which Presiding Judge Cynthia J. Bailey and Judge Andrew M. Jacobs joined.

---

**H O W E**, Judge:

¶1        Mental health patient A.G. appeals the superior court's order imposing on him mandatory mental health treatment. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2        A.G. has a history of mental illness and is designated seriously mentally ill. In the fall of 2024, he was scheduled for release from the Maricopa County Jail when two licensed social workers, D.G. and D.L. met with him. A.G. displayed concerning behavior: he was "initially not verbal" and responding to internal stimuli, then began talking to himself and acting aggressively, cursing at a social worker. Law enforcement took him from the jail to a behavioral health facility. Observation at the facility revealed that A.G. continued to respond to internal stimuli, and a crisis care manager applied to have A.G. admitted for an involuntary evaluation. Attached to that application was a witness information form listing D.G. and D.L. as potential witnesses. A psychiatric mental health nurse practitioner petitioned for a court-ordered evaluation, which the court granted.

¶3        Upon evaluation, a physician petitioned for court-ordered treatment. Attached to this petition was a witness list including D.G. and D.L. A.G.'s counsel moved to preclude D.G. and D.L. from testifying, arguing that because they were licensed social workers, they were subject to confidentiality requirements preventing them from testifying. The motion stated that "should the court permit the testimony . . . [A.G.] hereby requests additional time to *voir dire* the witnesses" about their confidentiality obligations. Citing *Matter of Commitment of Alleged Mentally Disordered Person*, 181 Ariz. 290, 293 (1995), counsel argued that "the proposed acquaintance witnesses conducted mental health evaluations [] for the sole purposes of determining commitment" and thus failed to meet

the petitioner's obligation to provide acquaintance witnesses who did not "participate[] in the psychological evaluation of the patient for commitment purposes."

¶4 The court held a hearing on the petition. At the hearing, the court noted that A.G.'s counsel amended the motion to include the argument about acquaintance witness eligibility at the last minute, that neither the court nor the State had time to review the amended motion before the hearing, and that a similar issue was pending before this Court. The court determined that it would "have the witnesses testify, subject to the objections" and proceed depending on guidance from this Court. The State called D.G. and D.L. who both testified that they were licensed social workers working at the Maricopa County Jail who met with A.G.

¶5 D.L. testified that his position included completing assessments for "emergency and nonemergent mental health needs . . . follow-up care" and "if they're being released, as in this case, we assess for safety." He clarified that "[t]his was an assessment for safety, for that purpose. We were aware [A.G.] had been released on his charges. And so that was the purpose of the meeting." When asked to clarify if the purpose of his meetings was to determine if a petition was necessary, D.L. testified that:

> [w]e have to see everybody to determine—anybody we're concerned about. We see to determine their safety for release because the [] jail is intake, transfer, and release. So everybody who comes in and everybody who leaves, we're making that mental health judgment for safety.

¶6 He testified about A.G.'s behavior throughout his meetings with him. At their first meeting, A.G. was "not verbal," "[d]idn't seem to be responding to any of [the] questions," and was not "capable of having a coherent conversation." At the second meeting, A.G. was "much more agitated," aggressive, and talking to himself.

¶7 D.G. then testified that the purpose of her meeting with A.G. was to assess him to "see if he was stable enough to be released." She also testified that she met with A.G. three times. All three meetings occurred on the same day around thirty minutes apart, "relatively close to each other." At their first meeting, A.G. "wasn't answering any questions, and didn't appear stable to be released." Then, at the second meeting "he banged his head really hard against the [cell] door." D.G. explained that once A.G. hit

his head, the possibility of a petition became relevant. After this, at their third meeting, A.G. would not respond to her.

¶8 At the end of the hearing A.G.'s counsel re-raised the motion, requesting that the court excise D.L.'s and D.G.'s testimonies because their conversations with A.G. were confidential and they were not proper "lay witnesses." Although the State did not file a written response, it argued that its witnesses gave A.G. disclaimers and "did not establish a counseling or a therapeutic relationship" but "testified that they were there to do an assessment of [A.G.'s] mental stability for safety." The court denied the motion, finding no therapeutic or counseling relationship. The court ultimately ordered A.G. to undergo treatment, finding that he was a danger to himself and persistently or acutely disabled.

¶9 A.G. timely appealed and we have jurisdiction. A.R.S. §§ 12-120.21(A)(1), 36-546.01(A)(1).

**DISCUSSION**

¶10 On appeal, A.G. does not re-raise the confidentiality argument he made to the superior court but contends that, because the social workers' "primary contact was to assess and evaluate [A.G.] for mental health treatment" they were prohibited from testifying as acquaintance witnesses. We stayed this appeal pending a decision in *In re MH2023-004502*, 583 P.3d 744 (Ariz. 2026) (as amended) from the Arizona Supreme Court addressing a similar issue. The supreme court ultimately held that a licensed social worker may testify as an acquaintance witness regarding their evaluation of a patient before an application for court-ordered treatment was filed. *Id.* at 748 ¶ 14. Following the supreme court's decision, we granted the parties supplemental briefing. In his supplemental briefing, A.G. conceded that D.G. and D.L. "were not part of the evaluation process" and "were not disqualified from testifying as acquaintance witnesses due to their roles." *See id.* at 746, 748 ¶¶ 4, 14 (a licensed social worker who meets with an individual before a petition for court-ordered treatment is "not disqualified from testifying as an acquaintance witness"). But he maintains his argument that D.G. and D.L. "lacked the perspective required of acquaintance witnesses" "because the only interaction they had with Appellant were for mental health assessment."

¶11 We note that, during the pendency of this appeal, "the Legislature amended § 36-539(B) to clarify that licensed behavioral health

professionals may testify as acquaintance witnesses."[1] *Id.* at 747–48 ¶ 11. Thus, this matter is arguably moot. *See State v. Sweet*, 143 Ariz. 266, 269 (1985) (generally, we do not apply statutes retroactively "unless expressly specified by the legislature," but an amendment that clarifies a statute may be applied retroactively in certain situations). Given "the important liberty interests at stake in matters involving involuntary mental health evaluation and treatment," *MH2023-004502*, 583 P.3d at 748 ¶ 11, and that A.G.'s argument extends to the facts of this specific case, we consider the merits of his remaining argument.

¶12 "We review issues of statutory interpretation de novo, but we view the facts in the light most favorable to upholding the superior court's judgment and will not set aside its findings unless clearly erroneous." *In re MH2020-004882*, 251 Ariz. 584, 586 ¶ 12 (App. 2021) (as amended). We do not require "strict compliance" with statutory requirements in the mental health context, only "complete compliance with each statute's requirements, even when that compliance is technically different from what the statute requires." *In re Pima Cnty. Mental Health No. 20200860221*, 255 Ariz. 519, 524 ¶ 11 (2023).

¶13 A petition for court-ordered involuntary mental health treatment requires testimony from at least two evaluating health professionals and two acquaintance witnesses. A.R.S. § 36-539(B). A.G. argues that, because in his view the social workers were not proper acquaintance witnesses, "[t]he court order for treatment must be vacated because no qualified acquaintance witnesses testified at the hearing."

---

[1] The relevant section of § 36-539(B) now reads:

> The evidence presented by the petitioner or the patient shall include the testimony of two or more witnesses, *regardless of the witnesses' professional licensure*, if any, who observed or were acquainted with the patient at the time of the alleged mental disorder before the submission of the current application for evaluation pursuant to § 36-520 or, if after the submission of the current application, who were not formal participants in the evaluation process. The testimony of the witnesses shall be limited to observed facts and may not include expert opinion or conclusions.

A.R.S. § 36-539(B) (emphasis added).

¶14 A.G. maintains that D.G. and D.L. were disqualified from testifying because they met with him only when he was in a suicide watch cell and thus could not "provide the trial court with informal, day-to-day observations" about his behavior and were thus "not qualified acquaintance witness[es]." But "[t]he statute does not impose a specific length of time over which the acquaintance or familiarity with the patient must take place or the manner in which the witness's familiarity with the patient must be acquired." *In re MH 2008-002596*, 223 Ariz. 32, 36 ¶ 17 (App. 2009). Rather, an acquaintance witness is anyone "acquainted with the patient at the time of the alleged mental disorder." A.R.S. § 36-539(B). "The core question when analyzing whether a witness may satisfy the statutory 'acquaintance' requirement is whether the prospective witness has relevant, personal knowledge of the mental disorder alleged." *In re MH2012-002480*, 232 Ariz. 421, 423 ¶ 9 (App. 2013).

¶15 A.G. claims that because D.G. and D.L.'s "interactions with [him] were formal, evaluative in nature, structured for a particular purpose, and conducted while [he] was under the strains of being evaluated for potential mental health treatment in a suicide watch jail cell" that they could not provide the court with testimony about "informal, day-to-day contact" with him. But where a "particular event or occurrence, such as [a] conversation" going to the witnesses' knowledge exists "at the time of the alleged mental disorder," the witness need not provide "informal day-to-day observation[s]." *MH 2008-002596*, 223 Ariz. at 33–34, 36–37 ¶ ¶ 3, 19 n.2 (holding that a nurse who took a single, fifteen-minute crisis-intervention telephone call from the appellant qualified as an acquaintance witness). Here D.G. and D.L. both had meetings with A.G. that contributed to their understanding of his mental state, and they both provided personal and relevant knowledge of his behavior "at the time of the alleged mental disorder." *Id.*

¶16 Arizona jurisprudence does not support the contention that an individual who observes a patient only in unique or stressful circumstances is not qualified to testify as an acquaintance witness. *See MH2020-004882*, 251 Ariz. at 585, 586–87 ¶¶ 7, 18 (finding that social workers who spoke to distressed patients in the emergency room may testify as acquaintance witnesses); *MH 2008-002596*, 223 Ariz. at 35–37, ¶¶ 12, 15–16, 19 (finding that a nurse who took a single, fifteen-minute telephone call from the appellant qualified as an acquaintance witness); *In re Pima Cnty. Health No. MH 862-16-84*, 143 Ariz. 338, 339 (App. 1984) (permitting acquaintance testimony from two hospital employees who did not know the appellant before she self-admitted to a psychiatric hospital for suicidal thoughts). D.G. and D.L. both had relevant personal knowledge of

A.G.'s mental state and were thus able to testify as acquaintance witnesses. *See* A.R.S. § 36-539(B); *MH2012-002480*, 232 Ariz. at 423 ¶ 9.

## CONCLUSION

¶17         We affirm.



**MATTHEW J. MARTIN • Clerk of the Court**
**FILED**:         JR